Daly, F. J.
A writ of habeas corpus, directed to Major-General Butterfield, was granted by Judge Brady, upon the application of John W. Flynn, to bring up the body of George Reilly, alleged to have been wrongfully enlisted in the regular army of the United States, he being, at the time of his enlist *335 ment, a minor under the age of eighteen years, and an indentured apprentice of Elynn, the petitioner. General Butterfield returned to the writ that Reilly had been regularly enlisted in the service of the United States according to the rules and regulations of the service ; that he signed the statement or declaration made by recruits; that the oath required upon enlistment was duly administered to him, and that he was regularly examined by a surgeon appointed for that purpose. General Butterfield further returned that under the decisions of the advocate-general it was not his (General Butterfield’s) duty to produce the body of Reilly, and that his refusal and denial of the court’s jurisdiction was a matter on his part of official duty, and not from any disrespect to, or contempt for, the authority of the court, and that he annexed to the return one of the triplicate enlistment papers. The facts set up in the return were not denied by Flynn, the petitioner, but he produced satisfactory evidence showing that Reilly had been legally bound to him as an apprentice, in the city of Philadelphia, on the 11th of July, 1865, to serve for the period of four years, and that he was in his service as an apprentice at the time of his enlistment; that he (Flynn) had never consented to the enlistment; that Reilly’s parents were both dead when the indenture of apprenticeship was executed; that he was then nearly seventeen years old, and was, on the following December, at the time of his enlistment, under eighteen years of age. Upon these facts, the petitioner insisted that Reilly should be produced by General Butterfield in obedience to writ, and discharged, on the ground that his enlistment was illegal.
The facts set up by the petition constitute no ground for the discharge of Reilly. The organization of the army of the United States is one of the powers specifically conferred by the constitution upon Congress. It is in the power of Congress to declare who may be enlisted, and the regulations which have been established by the laws of the United States upon the subject are of controlling authority. So far as they relate to the enlistment or minors or apprentices they may be briefly stated.
The act of March 20, 1813, required the consent in writing of the parent, guardian or master to authorize the enlistment of minors under the age of twenty-one years. This provision was repealed by the act of Decomber 10, 1814, which act con *336 t-ained a provision in respect to the enlistment of apprentices, to the effect that in the case of the enlistment of any person held to service as an apprentice, his master should receive a designated portion of the bounty-money, a provision which impliedly recognizes the validity of the enlistment of apprentices. This act provided generally for the enlistment of able-bodied men between the ages of eighteen and forty-eight. It declared that such enlistment shall be binding and absolute upon persons under the age of twenty-one, and allowed recruits under that age four days from the time of their enlistment to reconsider and withdraw it. By the act of September 28, 1850, it was made the duty of the secretary of war to order the discharge of any soldier who, at the time of his enlistment, was under the age of twenty-one, upon evidence being produced to the secretary that the enlistment was without the consent of the parents or guardian of the minor ; but the act made no provision for the discharge of an apprentice enlisted without the consent of his master. After the passage of this act, it was repeatedly held by the judges of this court that an officer, upon habeas corpus, had no authority to discharge a minor from an enlistment. That the act of Congress had provided a mode in which minors could be discharged, and that the only remedy in such cases was by an application to the secretary of war (In the Matter of Eollis, June, 1862).
The act of the 13th of February, 1862, repealed the provision in the act of 1850, authorizing the secretary of war to discharge minors. It declared that no person should bo mustered into the service of the United States under the age of eighteen years, and that the oath of enlistment taken by the recruit should be conclusive as to his age. And the act of March 3, 1865, declared that any officer should be dishonorably cashiered who should muster into the military or naval service any minor between the ages of sixteen or eighteen, without the consent of his parents or guardian, or any minor under the age of sixteen, knowing him to be such ; and subjected any recruiting agent, substitute broker or other person, to fine and imprisonment who should, for pay or profit, cause any minor, without such consent, to be enlisted between the said ages, or under sixteen years of age, knowing him to be such. It is to be collected, as the result of this legislation, that minors can *337 not be enlisted under the age of sixteen; that they may be enlisted between the ages of sixteen and eighteen with the consent of their parents or guardians, and after eighteen without such consent; that the oath which is taken by the recruit at the time of his enlistment is conclusive as to his age, and that apprentices may be enlisted.
I have not the triplicate enlistment papers of Reilly now before me. They are referred to as annexed to the return, and were probably produced upon the hearing. If it appears by them that Reilly at the time of his enlistment swore that he was eighteen years of age or upwards, the petitioner is precluded from questioning it, as the statute declares that that oath shall be conclusive ; by which I understand that it shall be sufficient to make the enlistment binding and valid. The severe penalties imposed as a means to prevent the improper enlistment of minors ; the taking away from the secretary of war the authority to discharge them, and the effect given to their own oath as to their age, show that this was all the regulation that Congress deemed necessary for the protection of minors, and that if they swore at the time of their enlistment that they were eighteen years of age or upwards, the enlistment should be binding, and that it should not be in the power thereafter of the officers of the government or of the courts to discharge them upon the ground that they were under that age, and had enlisted without the consent of their parents or guardians. Nor does it affect the validity of the enlistment that the recruit was at the time an indentured apprentice. It is in the power of Congress to say who shall serve in the army. It has made no reservation in the case of apprentices, but on the contrary, by providing for the division of the bounty between the master and the apprentice, it has indicated that this class of persons may be enlisted.
But if there should be any doubt of the correctness of this view of the law, there is another and conclusive answer to this application, which is, that Reilly is held to service as a soldier in the regular army by an officer deriving his authority from the government of the United States, and as the question presented, his right to be discharged from the army is one in which the general government is interested, and as the validity of his enlistment depends upon the construction to be put upon *338 the laws of the United States, the application should be to the judicial tribunals of the United States, and not to the courts or judicial officers of the States. The privilege of the writ of habeas corpus is secured to every citizen by the constitution of the United States, and the due protection of the liberty of the citizen demands that the judicial officers of the States should grant it whenever complaint is made to them that a person is illegally imprisoned or restrained in his liberty; but when it is shown in answer to the writ that the person is held to service in the army by an officer acting under the authority of the United States, and claiming to hold him as an enlisted soldier, the writ, so far as the State government is concerned, has fulfilled its office, and the inquiry whether he is an enlisted soldier, or whether he could be lawfully enlisted, is one especially appropriate to, and in my judgment exclusively belonging to, the judicial tribunals of the United States. The judicial powers of those tribunals, by the constitution, extend to all cases arising under the laws of the United States, and to all controversies to which the United States is a party, and they have authority to grant the writ of habeas corpus, and to give in such cases any relief which it would be in the power of the State tribunals to afford. Chancellor Kent said, half a century ago, upon an application to the supreme court of this State for the release upon habeas corpus of a minor who had enlisted in the army under the age of seventeen without the consent of his father, “ The federal courts have complete and perfect jurisdic- “ tion in the case, and there is no need of the jurisdiction or in- “ terference of the State courts, nor does it appear to me to be “ fit that the State courts should be inquiring into the abuse of “ the exercise of the authority of the general governmentand the four other judges of the. court united with him in refusing the application, upon the ground that relief could be afforded by the judicial officers of the United States, whose jurisdiction they held to be unquestionable (In the Matter of Ferguson, 9 Johns., 239).
The propriety of this course is obvious. By leaving the determination of such cases to the national tribunals, the advantage is ultimately secured of a uniform course of decision and of procedure, instead of the conflict of opinion and of practice, which is the inevitable result of allowing every *339 judicial officer in a State to hear and determine such applications according to his own,view of the law. The supreme court of this State afterward, however, departed from this course, following two decisions in Massachusetts (The Commonwealth v. Cushing, 11 Mass., 67; Same v. Harrison, Id., 63). The opinion of the court was asked by the recorder of this city, and they directed him to discharge' a minor who had been enlisted without the consent of his guardian. In the Matter of Carlton (7 Cow., 471), the court, in a very brief opinion, and without giving any consideration' to the weighty reasons adduced by Chancellor Kent in the previous case, declared that the courts of this State had the right, in the exercise of their common law jurisdiction, to discharge any person illegally detained, and that if an enlistment was void by act of Congress, the courts or judicial officers of this State might discharge the person detained, there being nothing in the laws of the United States restricting them from the exercise of this power. Under this decision the judicial officers of the State exercised for many years jurisdiction in all such cases, which was practically attended with this injurious consequence to the interests of the United States; that the applications were usually heard ex parte; that they were very numerous, which was expeeially the case in this city, and particularly before the judges of this court; that judges differed in their construction of the act of Congress—some discharging where others would not, of which the case of aliens was a familiar illustration (See in the Matter of Ross, 1 Leg. Obs., 340; United States v. Wyngate, 5 Hill, 16), and where the judge decided erroneously, it was rarely possible to secure the United States against the effect of it, by a review of the decision, as the soldier was instantly discharged, and the general government lost not only his services, but in addition the bounty that had been paid to him and the expense incurred in his equipment and maintenance.
The decision of the supreme court of the United States in Abelman v. Booth (21 How. U. S., 506), has put an end to the claim of the courts or judicial officers of the States to entertain jurisdiction of, and to set at liberty persons who are in the custody of or held under the control of officers acting under authority of the government of the United States. The decision holds, in substance, that there is within the territorial *340 limits of every State two sovereignties—the government of the United States and the government of the State; that when a State judge or court is judicially apprized that the person claiming to be discharged is in custody under the authority of the United States, they can proceed no further; that they then know that he is within the dominión and jurisdiction of another government, and that neither,the writ of habeas corpus, nor any process issued under State authority can pass over the line of division of jhe two sovereignties. He is within the dominion and exclusive jurisdiction of the United States, and if he is wrongfully restrained of his liberty, their judicial tribunals can afford him ample redress. This decision was rendered in a ease where a State court claimed the right to discharge upon habeas corpus a prisoner in custody of the marshal, under a warrant of commitment from a United States commissioner, and it is argued upon this application that the decision applies only where a person is in Custody upon the process of a United States court or judicial officer. The ground upon which the decision of the court was put by Chief-Justice Tauet, with the concurrence, it would appear, of all his associates, is as applicable to the case of a person held to service in the army, and is under the control of a military officer, as to one in custody under legal process. It was held to apply to the cases of Morris v. Newton (5 McLean U. S. Circ. Ct, 92); in the Matter of Jordan (2 Am. L. Reg. N. S., 749); in the Matter of Hobson (40 Barb., 34); State of New Jersey v. Zulich (5 Dutch, 409), which were all cases of persons held to service in the army of the United States, and in the conclusion arrived at by the judges in each of these cases I fully concur. ' .1
The application must therefore be denied.